Sherri A. HINTZ, Plaintiff,

v.

Shirley S. CHATER, Commissioner
of Social Security,[1] Defendant.

Civil Action No. 95–2227–GTV.

United States District Court,
D. Kansas.

Jan. 24, 1996.

---

1. Pursuant to P.L. No. 103–296, the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995. Shirley S. Chater, Commissioner of Social Security, has been substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action, pursuant to Fed.R.Civ.P. 25(d). Although the court has substituted the Commissioner for the Secretary in the caption, in the text reference will continue to be made to the Secretary because she was the appropriate party at the time of the underlying actions.

Stephen M. Kirschbaum, Wyandotte–Leavenworth Legal Services, Kansas City, KS, for plaintiff.

Nancy M. Landis, Office of United States Attorney, Kansas City, KS, for defendant.

## MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

This action is brought pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq., for judicial review of the final decision of the Secretary of Health and Human Services ("Secretary") denying plaintiff's application for supplemental security income benefits under the Social Security Act (the "Act"). Plaintiff has filed a motion for judgment (Doc. 9), that seeks an order reversing or remanding the Secretary's decision, while defendant has filed a motion in opposition to plaintiff's motion (Doc. 11).[2] For the reasons set forth below, the decision of the Secretary is affirmed.

### I. Procedural Background

On May 15, 1992, plaintiff filed an application for supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. The application was denied initially and on reconsideration.

On June 16, 1994, an administrative hearing at which plaintiff and her counsel were present was held before an administrative law judge ("ALJ"). On November 21, 1994, the ALJ rendered a decision in which he determined that plaintiff was not under a "disability" as defined by the Social Security Act. On March 13, 1995, the Appeals Council denied plaintiff's request for review of the ALJ's decision. Thus, the ALJ's decision stands as the final decision of the Secretary.

### II. Facts

Following is a brief summary of the evidence available to the ALJ and the testimony received at the hearing.

Plaintiff was born on November 11, 1953. She alleges that she has been disabled since May 1992 because she has no thyroid gland. Plaintiff previously had applied for child disability benefits pursuant to Title II of the Act in November 1989. The claim was denied and plaintiff did not appeal.

The medical evidence of record in this case dates back to the 1980s. During this time, plaintiff underwent treatment for the congenital absence of a thyroid gland. She also reported during a physical examination in 1987 that it was difficult for her to hold a job because of fatigue and lack of energy. At the time, plaintiff's activities included attending school part-time and working part-time at a newspaper.

Dennis Spratt, M.D., was one of plaintiff's treating physicians in 1989. Dr. Spratt noted in his treatment records that plaintiff reported that she could not work. He reported that plaintiff's history of chronic anxiety probably rendered her unable to work. He recommended that plaintiff undergo professional psychiatric evaluation.

Plaintiff entered counseling at the Franklin County Mental Health Center in December 1989. She indicated to her social worker that she wanted to become more independent and to obtain employment. Plaintiff's social worker noted in February 1990 that if plaintiff continued to utilize therapy, she could seek employment within twelve months.

In 1990, plaintiff also underwent counseling at the University of Kansas Medical Center. Progress notes from the University of Kansas Medical Center indicate that plaintiff was not prescribed any medication for a mental impairment during her time in therapy.

In February 1990, plaintiff sought a consultative mental examination. The examination revealed that plaintiff suffered from depression, a low frustration tolerance, and symptoms of panic and anxiety. The treating physician diagnosed plaintiff as operating within an average intellectual range and that

---

2. The Tenth Circuit, in Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1579 n. 29 (10th Cir.1994), disapproved of the motion practice followed in this district pursuant to D.Kan.Rule 503. D.Kan.Rule 83.7 revised D.Kan.Rule 503 to comply with the ruling in Olenhouse. For purposes of the present appeal, the court attaches no legal significance to the titles that appear on these motions and instead will, as it has always done, follow the well-established standard of review for Social Security appeals and will rely only on the evidence found within the administrative record.

she might have some problems associating with supervisors and coworkers due to her lack of self-esteem and low expectations. He also asserted that plaintiff had the ability to understand simple and complex job instructions and that she could concentrate on tasks during a normal eight-hour work day.

The Irlen Clinic reported in August 1990 that plaintiff suffered from Scotopic Sensitivity Syndrome which affected her reading and writing activities. This is a perceptual dysfunction related to difficulties with light sources, glare, luminance, wavelength, and contrast.

Steven B. Zeiler, M.D., was plaintiff's treating physician in 1991 and 1992. In April 1992, plaintiff complained of chronic pain and fatigue, but Dr. Zeiler noted inconsistencies between her alleged symptoms and her purported activities. Dr. Zeiler noted in a letter dated June 8, 1992, that he treated plaintiff for congenital hypothyroidism and that it was "adequately replaced with a thyroid hormone replacement." He also reported that plaintiff's main problem was chronic exercise intolerance (lack of endurance) that was unrelated to inadequate thyroid replacement. Additionally, Dr. Zeiler indicated that plaintiff appeared to suffer from mild depression. Although he believed plaintiff's symptoms to be real, Dr. Zeiler concluded that the only medical explanation for plaintiff's condition was her obesity.

Plaintiff visited Dr. Zeiler a second time in June 1992. During this consultation, Dr. Zeiler discussed exercise options with plaintiff. As of October 13, 1992, plaintiff's medication included Synthroid, Benadryl, and Ibuprofen. Her medical problems included congenital hypothyroidism, weight gain, and chronic fatigue. There was no clear medical explanation available for plaintiff's fatigue complaint. Plaintiff's doctor advised her to return in six months or as needed.

Dr. Spratt indicated in a June 1992 clinical note that plaintiff had full range of motion in all joints, no definite physical abnormality, and no identifiable acute mental illness. He also noted that plaintiff complained of chronic fatigue and that she had applied for disability.

Plaintiff underwent a consultative examination from Arnold E. Moskowitz, Ph.D., on September 17, 1992, at the request of Disability Determination Services. Dr. Moskowitz reported that plaintiff complained that she had difficulty working more than four hours at a time because of fatigue that was possibly associated with depression. Plaintiff informed Dr. Moskowitz that she had lived with her mother all of her life which caused her a certain amount of anxiety. She stated that her daily activities included taking walks, quilting, laundry, shopping, some cleaning, and watching television. Dr. Moskowitz noted that plaintiff appeared to be mildly depressed, but that she was not psychotic. He also reported that plaintiff had good short term memory, acceptable abstract reasoning, excellent arithmetic skills, an ability to reproduce geometric figures, and could manage her own funds.

From August 1991 until May 1993 plaintiff's weight increased by twenty-seven pounds. Although she was on a low salt diet, plaintiff weighed 207 pounds in May 1993. In March 1993, plaintiff had pain in her right ankle, but an x-ray of that ankle indicated it was normal. In May 1993, plaintiff complained of persistent pain in her right leg. An x-ray revealed a possible stress fracture of the right distal tibia that was healing. During the May 1993 examination, plaintiff told doctors that her leg was fifty percent better than her March 1993 examination, but that she was still unable to work. By August 1993, plaintiff no longer had pain in her right ankle and she exhibited full range of motion and function.

Elias Chediak, M.D., performed a consultative examination of the plaintiff in September 1994. Plaintiff told Dr. Chediak that she could not work full-time and complained of tiring easily. She also informed Dr. Chediak that she was placed on Prozac the previous month and felt that she had more energy and could eat better on this medication.

Although plaintiff denied feeling depressed, Dr. Chediak concluded that her symptoms of tiredness, stress, difficulty in thinking, excess sleep, and feeling isolated were related to depression. The doctor diagnosed plaintiff as suffering major depression

and he concluded that plaintiff could not work because of her depression. However, the doctor noted no evidence of a thought disorder and felt plaintiff was capable of following simple directions.

Dr. Chediak's report included a questionnaire that rated plaintiff's ability to perform work-related activities. He rated plaintiff's ability to follow work rules and interact with supervisors as good; her ability to deal with the public, use judgment, relate to co-workers, and maintain attention and concentration as fair; and her ability to deal with work stresses and function independently as poor. Dr. Chediak further concluded that plaintiff's ability to understand, remember, and carry out detailed or simple job instructions was good. He also found that plaintiff had the ability to maintain her personal appearance, demonstrated reliability, could behave in an emotionally stable manner, and could interact with others in a socially acceptable manner.

Plaintiff, her mother, and a vocational expert appeared and testified at the administrative hearing held on June 16, 1994. Plaintiff testified that she had lived with her mother all of her life except for one two-week period. She stated that she had attended college from 1977 until 1990, and had completed nurse's aide training in 1990. Plaintiff worked as a nurse's aide at a nursing home in 1991 for two weeks, but quit that job because she was afraid to live alone. However, plaintiff received a favorable recommendation from that employer, and later worked two and a half months at another nursing home. Plaintiff testified that she was forced to quit this second nurse's aide position because she became so tired that she could not work fast enough. After leaving that position, plaintiff did not seek further employment as a nurse's aide. Plaintiff also worked for two or three years part-time at a local newspaper. Plaintiff stated that she could no longer work more than three hours at a time without getting tired, and that she has had a life-long problem in keeping her balance.

The ALJ questioned plaintiff about her hobbies and interests, and plaintiff replied that she quilted and did woodcarving and ceramics. In describing her daily activities, plaintiff testified that she walked her dog every couple of hours, cleaned the house, watched television, sat on the deck, and tended her garden. Plaintiff stated she was unable to drive because of her fear that her car would break down, leaving her stranded. She also testified that groups of people in unfamiliar surroundings made her anxious, and that her ability to handle stress had worsened in the last two or three years.

Mary Alice Hintz, plaintiff's mother, testified that her daughter had received treatment for a missing thyroid gland since the age of eight weeks. Additionally, she testified that plaintiff had respiratory problems, asthma, and fatigue. Plaintiff's mother also stated that she handled plaintiff's business affairs, gave her spending money, and had always supported plaintiff. Plaintiff's mother further testified that plaintiff had not held full-time employment for an extended period of time since graduating from high school in 1972.

According to plaintiff's mother, plaintiff had experienced anxiety during her entire adult life, and, in fact, plaintiff would cry for two or three hours at a time after becoming stressed. She further testified that plaintiff had always had problems with fatigue. Plaintiff's mother also stated that plaintiff was able to read and write. Plaintiff also could mow the lawn, but would become weak after mowing for ten or fifteen minutes. Plaintiff's mother opined that plaintiff could work two to four hours at a time, but not every day. She also noted that plaintiff's fatigue had worsened during the past five years.

Lisa Keen, a vocational expert, testified at the hearing at the ALJ's request. She classified plaintiff's past relevant work as a certified medication aide. The ALJ posed a hypothetical question regarding plaintiff's ability to work in which he asked Ms. Keen to assume that plaintiff had a thyroid defect and had taken a thyroid supplement all of her life, had a mental impairment that affects her ability to engage in work-related activities, could lift and carry no more than ten pounds, could work in a seated position if given the opportunity to occasionally stand, could interact normally with supervisors, co-

workers, and the public, and needed an un-stressful job. Ms. Keen responded that plaintiff would be unable to perform her past relevant work, but that she could perform selected unskilled, sedentary jobs such as ticket seller, microfilm camera operator and surveillance system monitor. Ms. Keen testified that these jobs existed in significant numbers in both the national and local economies.

In response to questioning from plaintiff's attorney, Ms. Keen testified that if plaintiff had a congenital absence of a thyroid, obesity, scotopic sensitivity syndrome, chronic anxiety and depression with underlying fatigue, it would render plaintiff disabled. Ms. Keen further stated that if plaintiff's testimony and that of her mother were credible, she would not be able to work because of her need to nap during the day.

### III. ALJ's Decision

Among the findings made by the ALJ are the following:

- Plaintiff suffers from the following severe impairments: congenital hypothyroidism that is adequately replaced with a thyroid hormone replacement; obesity; possible stress fracture of the right distal tibia; allergic dermatitis; cellulitis of the right face; cellulitis of the left arm; and depression.

- The testimony of plaintiff and her mother was not credible.

- Plaintiff's residual functional capacity precludes her from lifting or carrying more than ten pounds; being unable to stand at plaintiff's discretion; working in a stressful occupation, and having production quotas. She is not precluded from interacting with coworkers, supervisors or the public by her depression.

- Plaintiff is unable to perform her past relevant work as a certified medication aide, and is unable to transfer any acquired work skills to the skilled or semi-skilled work function of other work.

- There are significant numbers of sedentary unskilled jobs in the local and national economies which plaintiff could perform.

The ALJ concluded that plaintiff has not been under a "disability," as defined in the Social Security Act, at any time since May 15, 1992.

### IV. Analysis

To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The Secretary has developed a five-step sequential evaluation process for determining disability. *See* 20 C.F.R. §§ 404.1520(a)–(f), 416.920; *Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir.1988). If at any step in the process the Secretary determines that the claimant is disabled or is not disabled, the evaluation ends.

The first four steps are not at issue in this case. The ALJ determined that plaintiff established she was not currently engaged in substantial gainful activity (step 1), that she has a severe impairment (step 2), and even though she is not conclusively disabled by the nature of her impairment (step 3), she cannot return to his past relevant work (step 4).

The ALJ's decision that plaintiff is not disabled was made at the fifth step, at which the fact finder must determine whether the claimant has the residual functional capacity "to perform other work in the national economy in view of his age, education, and work experience." *Bowen v. Yuckert,* 482 U.S. 137, 142, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987). The Secretary bears the burden of proof at step five. *Id.* at 146 n. 5, 107 S.Ct. at 2294 n. 5.

The Secretary's determination is binding on this court if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Dixon v. Heckler,* 811 F.2d 506, 508 (10th Cir.1987). The court's review is to determine "whether the record as a whole contains substantial evidence to support the Secretary's decision and whether the Secretary applied the proper legal standards." *Castellano v. Secretary of Health and Human Services,* 26 F.3d 1027, 1028 (10th Cir.1994). While "more than a mere scintilla," substantial evi-

dence is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ did not properly consider Dr. Chediak's consultative examination report. Plaintiff also argues that the ALJ erred in not finding the testimony of plaintiff and her mother credible. Plaintiff further claims that the ALJ improperly structured his hypothetical question to the vocational expert.

Plaintiff first contends that the ALJ erred in failing to give substantial weight to the examination report of plaintiff's consulting physician, Dr. Chediak. The court finds plaintiff's contention against the weight of authority in the Tenth Circuit which holds that opinions of treating physicians are entitled to more weight than that of consulting physicians. *See Washington v. Shalala*, 37 F.3d 1437, 1441 (10th Cir.1994) (treating physician's opinion entitled to greater weight than opinion of consulting physician); *Williams v. Bowen, M.D.*, 844 F.2d 748, 757 (10th Cir.1988); *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir.1987) (nontreating physician's opinions are of suspect reliability); *Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir.1987); *Betts v. Shalala*, No. 94–2171–GTV, 1995 WL 164502 (D.Kan.1995) (this court reversed the decision of the Secretary when the ALJ gave the consultative physician's opinion more weight than the treating physician).

■ The court concludes that it was appropriate for the ALJ to accord lesser weight to the opinion of a government consultative physician. In this case, Dr. Chediak examined the plaintiff one time and his report was inconsistent with reports from plaintiff's treating physicians. *See Claassen v. Heckler*, 600 F.Supp. 1507, 1512 (D.Kan.1985) (court found that consultative physician who conducts one examination and issues report at odds with treating physician is accorded little weight). Opinions of treating physicians are binding on the ALJ "unless contradicted by substantial evidence to the con-

trary." *Id.* (citing *Broadbent v. Harris*, 698 F.2d 407 (10th Cir.1983)). A report from a one-time consultative physician does not constitute substantial evidence, especially when the medical evidence presented by plaintiff's treating physicians is to the contrary. *Id.*

■ The ALJ found that the report of the consultative physician, Dr. Chediak, was inconsistent with the other evidence presented. In his decision, the ALJ based his finding concerning Dr. Chediak's report on a number of factors:

• the inconsistency with the evidence presented by plaintiff's treating physicians;

• Dr. Chediak's one time examination of plaintiff;

• Dr. Chediak's opinion was unsupported by contemporaneous notations or observations of signs and symptoms commensurate with the conclusions of the residual function capacity assessment; and

• Dr. Chediak's opinion was inconsistent with the treatment records or opinions that plaintiff's condition had lasted or could be expected to last twelve months from the protective filing date.

The ALJ noted that Dr. Chediak's September 1994 consultative examination found plaintiff to be alert and orientated. Plaintiff presented Dr. Chediak with no evidence of hallucinations or delusions, and she denied any suicidal ideation or plans. Dr. Chediak noted that plaintiff complained of tiredness, stress, difficulty in thinking, feeling isolated, and sleeping too much.

In his report, Dr. Chediak noted that plaintiff exhibited no evidence of a thought disorder, and she was capable of following simple directions. Although Dr. Chediak opined that plaintiff is totally disabled, he noted in his mental assessment of plaintiff's ability to perform work related activities that plaintiff had a fair or better ability in all areas rated except for a poor ability to deal with work related stresses and to function independently. Dr. Chediak diagnosed plaintiff as having major depression and he concluded that she was unable to work because of that depression.

Dr. Chediak's conclusion is inconsistent with the medical opinions of plaintiff's treating physicians. Dr. Zeiler noted in June 1992 that plaintiff's main problem was chronic exercise intolerance (lack of endurance). The only medical diagnosis that Dr. Zeiler could offer for plaintiff's fatigue was obesity. In June 1992, Dr. Spratt[3] concluded that plaintiff had full range of motion in all joints, exhibited no physical abnormality, and was not suffering from an identifiable acute mental illness. Finally, Dr. Moskowitz performed a consultative examination of plaintiff in September 1992 and found that she was not psychotic, she had good short term memory, she had an excellent ability to reproduce geometric figures, and she was able to manage her own funds.

For the above stated reasons, the ALJ discounted the opinion of Dr. Chediak. The ALJ's reasons for refusing to give controlling weight to the report of Dr. Chediak are acceptable. Additionally, the ALJ properly evaluated the medical opinions of record. The court finds that Dr. Chediak's report does not present substantial evidence that contradicts the opinions of plaintiff's treating physicians. For these reasons, the court concludes that the ALJ accorded proper weight to the reports of plaintiff's treating physicians.

Plaintiff next argues that the ALJ erred in disregarding the testimony of plaintiff and her mother by improperly analyzing plaintiff's subjective complaints concerning her disability. In determining the severity of plaintiff's impairment, the ALJ specifically found that the testimony of plaintiff and her mother was not fully credible.

■ In analyzing subjective complaints, the ALJ must consider: "(1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment, and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375–76 (10th Cir.1992) (citing

*Luna v. Bowen*, 834 F.2d 161, 163–64 (10th Cir.1987)).

■ The issue presented by plaintiff is whether the ALJ's disbelief of plaintiff's complaint of disability was based on consideration of all the relevant evidence, and if so, whether his conclusion is supported by substantial evidence. The ALJ must consider several factors when evaluating the credibility of subjective complaints. These factors include

"the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony of nonmedical testimony with objective medical evidence."

*Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir.1991) (quoting *Huston v. Bowen*, 838 F.2d 1125, 1132 n. 7 (10th Cir.1988)).

■ In discounting plaintiff's subjective complaints, the ALJ noted that her testimony concerning the duration, frequency, and intensity of her impairments was inconsistent with the medical evidence in the record. In June 1992, Dr. Zeiler stated that plaintiff's main problem was chronic exercise intolerance that was not related to inadequate thyroid replacement. The clinical note of Dr. Spratt in June 1992, indicated that plaintiff had full range of motion in all joints, with no identifiable physical abnormalities or acute mental illness.

The findings of Dr. Moskowitz in September 1992 also belie plaintiff's subjective claim. The ALJ noted that Dr. Moskowitz found that plaintiff was not psychotic. Dr. Moskowitz also concluded that plaintiff had acceptable abstract reasoning, excellent arithmetic skills and ability to reproduce geometric figures, good short term memory, and had the ability to manage her own funds.

---

3. In his report, the ALJ erroneously refers to Dr. Spratt as D. Schaper, M.D. The June 1992 report in the record that the ALJ references was written by Dennis Spratt, M.D.

The ALJ also found plaintiff's lack of hospitalization, of emergency room admissions, of counseling for treatment of mental impairments, and of use of psychotropic medications were inconsistent with her subjective claims. For the above stated reasons, the ALJ found that plaintiff's testimony was not credible.

The ALJ also found that plaintiff's subjective complaints about her precipitating and aggravating factors were inconsistent with the medical opinions of plaintiff's physicians. Plaintiff's subjective complaints were that she suffered from fatigue after working three hours; she worked slower than other people; she had difficulty keeping her balance; she became anxious when around other people; she could walk only ten to fifteen minutes at a time; she cried for two or three days at a time; she performed tasks backwards; and she felt discouraged.

In addition to the medical opinions already set forth regarding plaintiff's condition, the ALJ found that plaintiff's testimony was unsupported by contemporaneous notations or observations of signs and symptoms by physicians that paralleled her testimony. Additionally, the ALJ noted that plaintiff's testimony was unsupported by laboratory or diagnostic tests, including the most favorable findings from the one time examination of Dr. Chediak.

Plaintiff's testimony also belied her subjective complaints. She testified that she took numerous walks during the day, performed household chores, went shopping, quilted, did woodcarving and ceramics, and walked her dog every couple of hours. Plaintiff also reported these activities to Dr. Zeiler who noted in 1991 and 1992 that her complaints were inconsistent with her activities. Dr. Zeiler specifically noted that plaintiff made quilts to supplement her mother's income. Plaintiff also informed Dr. Moskowitz in 1992 that she enjoyed ceramic work, basket weaving, sewing, painting, and quilt making. The ALJ concluded that plaintiff's testimony concerning her aggravating and precipitating factors was inconsistent with the objective evidence and was not credible.

Finally, the ALJ discounted plaintiff's testimony concerning her functional restrictions. Plaintiff testified that there were limitations on her functional capacity that significantly interfered with her performance of daily activities. The ALJ considered all of the reasons set forth above to conclude that plaintiff's testimony concerning activities of daily living was not credible.

The ALJ considered plaintiff's testimony but rejected it on the ground that it was inconsistent with the evidence in the record. Contrary to plaintiff's contentions concerning her disability, it appears that plaintiff was active when she chose to be. Although some of plaintiff's subjective claims were supported by the objective medical evidence, the objective evidence does not support the total disability that plaintiff claims.

■ The court concludes that the ALJ considered all relevant evidence before him in determining that the testimony of plaintiff and her mother, regarding the severity of plaintiff's disability, was not credible. The court finds that the ALJ gave proper consideration to the testimony of plaintiff's mother. The ALJ specifically noted in his decision that he considered the testimony of both the plaintiff and her mother. It is clear from his decision that the ALJ found that the testimony of plaintiff's mother was not credible for the same reasons that he found plaintiff's testimony to be not fully credible. *See Robinson v. Sullivan,* 956 F.2d 836, 841 (8th Cir.1992) (credibility of husband and wife's testimony). In reviewing such a credibility determination, the court should "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility." *Casias v. Secretary of Health and Human Serv.,* 933 F.2d 799, 801 (10th Cir.1991). The court finds that the ALJ's conclusion regarding the credibility of plaintiff and her mother is supported by substantial evidence.

Plaintiff further claims that the ALJ's hypothetical question to the vocational expert was improper because the question failed to include relevant information regarding plaintiff's condition. Specifically, plaintiff asserts that the ALJ erred in failing to consider the vocational expert's response to a hypothetical question that included a history of depression

and anxiety that was ongoing, a dependent personality, affective anxiety disorders, and underlying problems of fatigue that limits plaintiffs ability to engage in activity requiring physical exertion.

An ALJ's hypothetical questions must include a full description of a claimant's impairments in order for the testimony elicited by such questions to constitute substantial evidence to support the ALJ's decision. *Hargis,* 945 F.2d at 1492. However, the ALJ's hypothetical questions do not need to include all the limitations to which a claimant has testified. The ALJ may restrict his questions to those limitations he has found to exist based upon substantial evidence in the record. *See Gay v. Sullivan,* 986 F.2d 1336, 1341 (10th Cir.1993).

The court has already upheld the ALJ's finding that plaintiff's subjective complaints were not credible. A claimed impairment that is found not to be credible or is otherwise not supported by substantial evidence need not be included in a hypothetical. *See Jordan v. Heckler,* 835 F.2d 1314, 1316 (10th Cir.1987) (ALJ's failure to include complaints of pain in hypothetical was not inappropriate because there was not sufficient evidence that the pain interfered with plaintiff's ability to work). The court concludes that the ALJ did not err in relying on the vocational expert's testimony elicited by a hypothetical question that included only those impairments that the ALJ found to be credible.

### V. Conclusion

After careful consideration of the record and the parties' arguments, the court concludes that the record contains substantial evidence to support the ALJ's determination.

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiff's motion for summary reversal or remand of the Commissioner's decision (Doc. 10) is denied.

**IT IS SO ORDERED.**