**Margaret A. DAVIS, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

No. Civ. A. 97–2398–KHV.

United States District Court, D. Kansas.

Feb. 16, 1999.

Teresa M. Meagher, Law Office of Teresa M. Meagher, Leawood, KS, Margaret A. Davis.

Melanie D. Caro, Office of United States Attorney, Kansas City, KS, for John J. Callahan, Ph.D.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on plaintiff's *Motion for Judgment* (Doc. # 14) filed March 27, 1998. Plaintiff brings this action pursuant to D. Kan. Rule 83.7, seeking judicial review of the Commissioner's decision to deny her applications for disability benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and supplemental security income (SSI) benefits based on disability under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* Plaintiff is entitled to seek judicial review of the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3) (1976). For reasons stated more fully below, plaintiff's motion is overruled.

## I. Procedural History

The Social Security Administration denied plaintiff's applications of October 11, 1994, both initially (Tr. 39, 50–56, 68) and on reconsideration. (Tr. 59, 60–64, 69). After a hearing on April 24, 1996, an administrative law judge (ALJ) concluded that plaintiff was not disabled because she has the residual capacity to perform sedentary work. (Tr. 22, Finding 7). The ALJ therefore found that plaintiff was not entitled to disability benefits under Title II or to SSI benefits under Title XVI. On June 12, 1997, after consideration of additional medical evidence, the Appeals Council of the Social Security Administration denied plaintiff's request for review (Tr. 5–6). The ALJ's decision thus stands as the final decision of the Commissioner. *See* 20 C.F.R. 404.981, 416.1481 (1998).

## II. Summary of Facts

A hearing before the ALJ on April 24, 1996, established that plaintiff was 40 years old and had achieved her General Equivalency Diploma ("GED"). (Tr. 18). Plaintiff stated that she last attempted to work in October 1994. (Tr. 18). She worked as a scanner tagger, which involved scanning cases of damaged groceries and daily lifting of 40 to 50 pounds of various items. (Tr. 18, 279). She was on her feet all day. (Tr. 18). Plaintiff sustained an on-the-job injury on March 29, 1994, when she bent over to lift some merchandise. (Tr. 18). She was sent to occupational health, told that she had muscle spasms, taken off work and sent to rehabilitation. (Tr. 18) Plaintiff stated that she has never had neck or back surgery, but that she went through rehabilitation and a "work hardening" program. (Tr. 18). The program was supposed to prepare her to return to work but it worsened her condition. (Tr. 18).

Plaintiff is not currently in therapy. (Tr. 18). She went to Wyandot Mental Health Center two or three times for treatment of stress and anxiety-induced insomnia, but had to stop because she could not afford to pay for treatment. (Tr. 18). She stated that her medications make her sleepy and tired, and unable to focus. (Tr. 18). Plaintiff described her pain as an aching, burning sensation in her neck. (Tr. 18). She also stated that she experiences muscle spasms and cramps, and has more pain with walking or sitting. (Tr. 18). She stated that she experiences pain when washing her hair or cleaning her

house, and that when she has pain she has no patience to play with her grandchildren. (Tr. 18). She also gets tired when she goes to the grocery store. (Tr. 18). She stated that before her injury she was outgoing. (Tr. 18). She does not feel that she can work, however, due to her physical and mental state. (Tr. 18). Finally, she stated that she lies down during the day because her legs ache and her arms get tired, and when her pain is bad she takes hot showers. (Tr. 18).

A vocational expert testified at the administrative hearing. The ALJ posed a hypothetical question which asked the expert to assume plaintiff's age, education, and past relevant work, and to assume that plaintiff experiences back, neck and shoulder pain, has an adjustment disorder of adulthood and chronic pain syndrome, and is limited to performing sedentary work. In response, the expert stated that plaintiff could work as a telephone solicitor, ticket sales taker, and surveillance system monitor. (Tr. 21).

Based on the record and on the testimony at the hearing, the ALJ found that plaintiff would be unable to perform her past relevant work as a scanner, a light cleaner or a packer. (Tr. 20–21). The ALJ concluded, however, that plaintiff was capable of performing sedentary jobs which exist in significant numbers in the national economy, and that she was not under a disability as that term is defined in the Social Security Act. (Tr. 21).

### III. Standard of Review

 The Commissioner's decision is binding on this Court if the ALJ's determination is supported by substantial evidence. *See Hamilton v. Secretary of Health & Human Servs.*, 961 F.2d 1495, 1500 (10th Cir.1992). Substantial evidence is more than a scintilla; it is such relevant evidence as a reasonable mind might deem adequate to support a conclusion. *See*

*Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). This Court's review of the Commissioner's determination is limited. *See Hamilton*, 961 F.2d at 1497. The Court's function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Id.* at 1497–98. It is not a quantitative exercise. *See Knipe v. Heckler*, 755 F.2d 141, 145 (10th Cir.1985). "Evidence is not substantial 'if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.'" *Id.* (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983)).

### IV. Analysis

To establish entitlement to benefits, plaintiff must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. §§ 423(d) and 1382c(a)(3)(A). In order to determine whether claimant is under a disability, the ALJ applies a five-step inquiry: (1) whether claimant is currently working; (2) whether claimant suffers from a severe impairment; (3) whether the impairment meets an impairment listed in or medically equal to one listed in Appendix 1 of the relevant regulation;[1] (4) whether the impairment prevents claimant from continuing her past relevant work, and (5) whether the impairment prevents claimant from doing any kind of work. 20 C.F.R. §§ 404.1520, 416.920; *see also Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir.1988).

The burden of proving disability within the meaning of the Social Security Act rests with claimant. 42 U.S.C. § 423(d).

---

1. Appendix 1 is a listing of impairments for each separate body system. 20 C.F.R. Part 404, Subpt. P, App. 1. If a claimant has an impairment listed in Appendix 1 that lasts for a duration specified in the Appendix, the claimant is found disabled without consideration of age, education, or work experience. 20 C.F.R. 404.1520(d). The ALJ determined that plaintiff did not have an Appendix 1 impairment.

"Once the claimant makes a prima facie showing of disability that prevents [her] engaging in [her] prior work activity, however, the burden of going forward shifts to the [Commissioner], who must show that the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." *Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir.1991) (quoting *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir.1984)).

Here, the ALJ found that plaintiff has not engaged in substantial gainful activity since March 29, 1994; that she has a "severe impairment" as that term is defined in the regulations; and that while her impairments and resultant symptoms do not meet or equal the criteria contained in Appendix 1 of the relevant regulation, plaintiff would be unable to perform any of her past relevant work. (Tr. 15–21). The ALJ further found that plaintiff's allegations of complete disability are not fully credible and that she retains the residual functional capacity to perform sedentary work. (Tr. 15–21).

Plaintiff argues that the ALJ's decision should be overturned because (1) the ALJ failed to evaluate properly her credibility, and (2) the conclusion that she could perform other work was not supported by substantial evidence. Accordingly, plaintiff asks the Court to reverse the Commissioner's decision and remand with instructions for an immediate award of benefits. In the alternative, plaintiff asks that the Court remand for a new hearing to consider the new and material evidence which she submitted to the Appeals Council. The Commissioner argues that the Court should affirm the Commission's final administrative order.

In this case, the record as a whole contains substantial evidence to support the Commissioner's decision that plaintiff was not under a disability as defined in the Social Security Act, and that plaintiff would be able to perform other jobs which exist in the national economy. The ALJ reached his decision after he reviewed the entire record, including the objective findings, plaintiff's history of treatment, and reports of treating and examining physicians. (Tr. 15–18). The ALJ also reviewed such factors as plaintiff's daily activities; the duration, frequency and intensity of her pain; precipitating and aggravating factors; the type and adverse effects of her pain medication; treatment, other than medication, for pain relief; and functional restrictions. (Tr. 19–20).[2]

## A. The ALJ's Decision That Plaintiff Was Not Under a "Disability" Is Based Upon Substantial Evidence

Plaintiff argues that the ALJ failed to analyze her allegations of pain in accordance with *Luna v. Bowen,* 834 F.2d 161 (10th Cir.1987), and relevant regulations and rulings, and failed to consider her diagnosis of fibromyalgia. She further argues that the Appeals Council erred in failing to remand for consideration of additional evidence which she submitted in support of her claim.

### 1. Dr. Calkins' Opinion Regarding Plaintiff's Residual Functional Capacity

Plaintiff complains that the ALJ erred in finding that none of her treating physicians had described her as totally disabled and unable to perform work related activities. (Tr. 20). Specifically, she notes that at the time of the hearing, the ALJ did not have letters from Dr. Calkins and Dr. Welch. The letter by Dr. Welch did not address plaintiff's functional capacity. Therefore the ALJ did not err in noting that Dr. Welch did not describe plaintiff as totally disabled or unable to perform work-related activities.

Dr. Calkins' letter, addressed to plaintiff's attorney on June 23, 1996, stated that "for the foreseeable future I feel that [plaintiff] is not able to function adequately in the work place." (Tr. 274). Plaintiff

---

2. The factors which the Commissioner must consider in evaluating a claimant's subjective complaints were set forth in *Luna v. Bowen,* 834 F.2d 161, 165–66 (10th Cir.1987).

argues that Dr. Calkins' opinion is entitled to controlling weight under Social Security Ruling ("SSR") 96–2p, because his opinion is a medical opinion from a treating source, is well supported and medically acceptable, and is not inconsistent with the other substantial evidence in the record.

█ Plaintiff's argument on this score is not persuasive. The responsibility for determining claimant's residual functioning capacity rests with the ALJ or Appeals Council. *See* 20 C.F.R. §§ 404.1546, 416.946. Dr. Calkins' opinion that plaintiff cannot function in the workplace is not a medical opinion, but rather an opinion on the application of the statute, an issue which is reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e); *Cruze v. Chater*, 85 F.3d 1320, 1325 (8th Cir.1996) (citation omitted). Although a treating physician may offer an opinion that a claimant is totally disabled, that opinion is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the Commissioner. *See Castellano v. Secretary of Health and Human Servs.*, 26 F.3d 1027, 1029 (10th Cir.1994) (citing 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)).

In any event, although the ALJ did not have this evidence at the time of the hearing, the Appeals Council did have it and it concluded that Dr. Calkins' letter did not provide a basis for overturning the decision of the ALJ. (Tr. 5, 7). The Appeals Council's review of the Commissioner's final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence. *See O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir.1994).

2. Plaintiff's Fibromyalgia Diagnosis

Plaintiff complains that the ALJ failed to note or discuss her diagnosis of fibromyalgia in November 1994, and argues that the ALJ erred in refusing to consider that diagnosis in assessing her credibility. Specifically, plaintiff argues that the ALJ erred in relying on the medical opinions of Dr. O'Mailey (Tr. 102–104) and Dr. Zarr (Tr. 127), who released her to return to work with certain functional restrictions. She contends that their opinions are entitled to less weight because they did not take into consideration her later diagnosis of fibromyalgia.

Plaintiff also reiterates her complaint that the ALJ did not have before it the letters from Dr. Calkins and Dr. Welch, both of whom opined that she suffered from fibromyalgia (Tr. 274, 274A–B), and further argues that the Appeals Council erred when it failed to specify its reasons for rejecting that additional evidence. (Tr. 5). In addition, she argues that the testimony of Dr. Stechshulte (Tr. 147, 150) and Dr. Yu (Tr. 155), which also confirmed the fibromyalgia diagnosis, is entitled to great weight because their opinions and assessments were in their areas of specialty, rheumatology (Dr. Stechshulte) and neurology (Dr. Yu).

Plaintiff cites *Sarchet v. Chater*, 78 F.3d 305 (7th Cir.1996), and similar cases for the proposition that the ALJ must consider her fibromyalgia in weighing her credibility.[3] In response, the Commissioner

---

**3.** In *Sarchet*, Judge Posner noted that the causes of fibromyalgia are unknown and its complaints are entirely subjective; laboratory tests cannot confirm the presence or the severity of the disease; and its principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness and multiple tender spots. 78 F.3d at 306–7. In *Lantow v. Chater*, 98 F.3d 1349 (Table; text available in Westlaw at 1996 WL 576012) (10th Cir.1996), claimant submitted evidence that in the opinion of a rheumatologist, she suffered from fibromyalgia and could not be employed. The Appeals Council, however, in reliance on normal test results and a physical assessment of residual

functional capacity, found that such evidence was insufficient to establish disability. On appeal, the Tenth Circuit reversed, noting that fibromyalgia is diagnosed by ruling out other diseases through medical testing and that negative test results could not support a conclusion that the claimant did not suffer from a potentially disabling condition. 1996 WL 576012, at *1. Similarly, the fact that fibromyalgia cannot be diagnosed through objective medical testing does not necessarily mean that claimant was not disabled. Accordingly, the Tenth Circuit held that the decision of the Appeals Council was not supported by sub-

observes that plaintiff has not alleged disability on the basis of fibromyalgia, but disability on the basis of neck and upper back pain. (Tr. 76).[4] The Commissioner argues that the ALJ is under no "obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability," *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir.1996) (citation omitted), and further argues that plaintiff is not entitled to review an issue raised for the first time on appeal. The Commissioner also argues that reports from one-time consultative physicians generally do not constitute substantial evidence, *e.g.*, *Broadbent v. Harris*, 698 F.2d 407 (10th Cir. 1983), and that the ALJ was therefore justified in discounting the opinions of Dr. Stechshulte and Dr. Yu.

Plaintiff's arguments are not persuasive. As the Commissioner correctly points out, although the record must demonstrate that the ALJ considered all of the evidence, the ALJ is not required to discuss every piece of evidence. *See Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir.1996) (citing *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984)). The record reveals that the ALJ was aware of and considered evidence regarding plaintiff's fibromyalgia. (Tr. 17). The ALJ did not expressly discuss Dr. Stechshulte's diagnosis of fibromyalgia. Even if the ALJ had found that plaintiff suffers from fibromyalgia, however, the record suggests no reason why that finding would have changed the outcome of plaintiff's application for benefits. Plaintiff concedes that "neck and back pain is the reason why plaintiff is unable to work," while fibromyalgia is simply the "medical reason for those symptoms," *Plaintiff's Brief In Reply To Brief Of Commissioner* (Doc. # 19) filed July 13, 1998, at 2, and

the ALJ's findings confirmed that plaintiff suffers from "severe neck, shoulder, and back pain." (Tr. 22, Finding 3).

Furthermore, the Appeals Council considered plaintiff's additional evidence (the letters from Dr. Calkins and Dr. Welch confirming her fibromyalgia), but found that they did not provide a sound basis for changing the ALJ's decision. (Tr. 5). As noted above, the ALJ's decision thus stands as the final decision of the Commissioner. *E.g.*, *Taylor v. Callahan*, 969 F.Supp. 664, 667 (D.Kan.1997) (citing 20 C.F.R. §§ 404.981, 416.1481 (1996)). The ALJ's findings are supported by substantial evidence in the record, and we cannot conclude that the Commissioner (or the Appeals Council on review) failed to consider plaintiff's diagnosis of fibromyalgia in assessing her credibility.

### 3. Dr. Kaspar's Testimony

Dr. Kaspar opined that "certainly [plaintiff's] pain and injury difficulties would preclude any work involvement requiring even the slightest degree of physical exertion." (Tr. 159). He also opined that plaintiff could possibly tolerate a sedentary job because her intellectual and cognitive abilities remained reasonably intact. (Tr. 159). Plaintiff complains that Dr. Kaspar is not a medical doctor, and that he was not qualified to express an opinion regarding her physical tolerance. Accordingly, plaintiff argues that the ALJ should have discounted Dr. Kaspar's testimony.

The Court fails to see any basis for discounting Dr. Kaspar's testimony. The ALJ cited his testimony for the proposition that plaintiff's intellectual and cognitive capabilities, although moderately affected by her pain and depression, would permit her to work in a sedentary environment. (Tr. 20). Dr. Kaspar's opinion related to plain-

---

stantial evidence and remanded to the Commissioner for further consideration of plaintiff's impairments. *Id.* at *2.

**4.** Plaintiff complains that defendant's argument on this score is meritless because the fibromyalgia diagnosis occurred after she

filed her claim for disability benefits in October 1994. She fails to explain, however, what effect the subsequent diagnosis had on her previously-filed claim for disability benefits, and the record does not reveal that she sought to amend her claim to reflect that diagnosis.

tiff's *mental* functioning, and her mental status is clearly relevant. *See* 20 C.F.R. §§ 404.1545(c), 416.945(c) ("[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, ... may reduce your ability to do past work and other work.") Dr. Kaspar's statement that plaintiff could not perform even the slightest degree of physical exertion due to "pain and injury difficulties" does not transform his opinion into an opinion about plaintiff's physical tolerance, and the record does not reveal that the ALJ relied on Dr. Kaspar's opinion in determining plaintiff's physical tolerance in addition to her mental capacity. (Tr. 15–23).

Plaintiff also briefly challenges the ALJ's finding that she suffers from an adjustment disorder rather than depression. She complains that the ALJ ignored the diagnosis from Wyandot Mental Health Center that she was suffering from "Major Depression" and instead relied upon Dr. Kaspar's diagnosis of "Adjustment Disorder of Adulthood—with depressed mood, secondary to physical factors and accidental injury." (Tr. 159). Citing Social Security Ruling 96–6p, plaintiff argues that the ALJ should have accorded less weight to Dr. Kaspar because he was simply a one-time examining consultant, as opposed to a treating source like Wyandot Mental Health Center.

Again, plaintiff's argument is not persuasive. Dr. Kaspar has a Ph.D. and is a licensed clinical psychologist. (Tr. 159). In contrast, the one person who saw plaintiff at Wyandot Mental Health Center was a "clinician" by the name of Judy K. Martin, M.S., who offered a specific diagnosis of "Major Depression, Single Episode Moderate." (Tr. 179). Under the regulations, the opinion of a specialist about medical issues related to his area of specialty deserves more weight than the opinion of a source who is not a specialist. *See* 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). Furthermore, it is the ALJ's function to resolve conflicts among the various treating and examining physicians. *See Bentley v. Shalala,* 52 F.3d 784, 785 (8th Cir. 1995). Accordingly, the ALJ did not err in considering Dr. Kaspar's testimony.[5]

4. The ALJ's Evaluation Of All Of The Record Evidence Regarding Plaintiff's Credibility

Plaintiff also argues that an evaluation of all of the record evidence establishes that her complaints of disabling pain are credible. Specifically, she notes that she saw various physicians and specialists; she underwent physical therapy and work hardening; she expressed frustration that the Workers' Compensation insurance carrier refused to pay for certain tests recommended by her physicians; she has taken prescription medication for pain and/or depression and anxiety; she has consistently complained to her healthcare providers of chronic and severe pain; her daily activities are severely limited and she leads a "very sedentary lifestyle"; her medications cause her to feel sleepy, which can seriously impair a person's ability to function; and she has changed and adjusted her medications several times because they were ineffective.

■ Plaintiff's contention that the ALJ erred in discrediting her allegations of disabling pain is not persuasive. The ALJ reached his decision after review of the entire record, including the objective findings, plaintiff's history of treatment, and reports of treating and examining physicians. The record reveals that as of July 1994, plaintiff was not regularly taking her antidepressant medication (Tr. 134), and

---

**5.** Even if plaintiff did suffer major depression, she does not argue that she alleged major depression as the basis for her claim of total disability, and the record suggests that she did not. See Social Security Notice, dated February 6, 1995 ("You said that you are unable to work because of myofascial pain, fibromyalgia and sarcolocostal syndrome.") (Tr. 51). The mere presence of a mental disturbance does not automatically indicate a severe disability. *See, Wiley v. Chater,* 967 F.Supp. 446, 452 (D.Kan.1997) (citing *Bernal v. Bowen,* 851 F.2d 297, 301 (10th Cir.1988)).

although medication helped to control her anxiety, she does not currently take anxiety medication. (Tr. 284, 287). Furthermore, based on the record, the ALJ articulated the following grounds for discrediting plaintiff's subjective complaints of neck and back pain: x-rays of her cervical and thoracic spine were normal; in March 1994 her cervical spine range of motion was normal and there were no palpable muscle spasms in her back or neck; in November 1994 there was no limitation of neck movement in any direction and a motor examination of her upper and lower extremities was normal; and none of her treating physicians have described her as disabled and totally unable to perform work. (Tr. 20).[6] The ALJ also considered evidence of plaintiff's relatively poor work record for the 15–year period preceding her alleged disability; her numerous daily activities, which the ALJ found to be inconsistent with disabling pain; the absence of allegations of adverse side effects from her medications (other than sleepiness); and the absence of allegations that the medications were ineffective. (Tr. 19).

The ALJ properly evaluated all of the record evidence, and the record as a whole contains substantial evidence to support the ALJ's finding that plaintiff's complaints of disabling pain were not credible and that she was not disabled within the meaning of the Social Security Act.

**B. The ALJ's Decision That Plaintiff Could Perform Other Work Was Supported By Substantial Evidence**

██ Plaintiff argues that the ALJ erred in finding that she could perform a significant number of jobs in the national economy. At the hearing on May 30, 1995, the ALJ posed a hypothetical question which asked the vocational expert to assume plaintiff's age, education, and past relevant work, and to further assume that plaintiff experiences back, neck and shoulder pain, has an adjustment disorder of adulthood and chronic pain syndrome, and is limited to performing sedentary work. In response, the expert identified three jobs which the hypothetical claimant could perform: telephone solicitor, ticket sales taker, and surveillance systems monitor. (Tr. 21). Plaintiff complains that the ALJ erred in relying on such testimony because it was based on an incomplete hypothetical which did not include her alleged "pain and mental limitations." Plaintiff contends that the more complete hypothetical was framed as follows:

> If the pain that [plaintiff] suffers would be such that it would distract her from the duties or the jobs so that she would have trouble remembering jobs or instructions ... and might have difficulty interacting with supervisors or co-workers or the public. Or if the pain should so distract her that she could not focus on the duties of her job. How would any of those factors affect your answer?

(Tr. 293). Based on this version of the hypothetical, the vocational expert testified that plaintiff would not be able to perform any job in the national economy. Accordingly, plaintiff argues that the ALJ erred in finding that she could perform the three jobs which the expert identified.

As the Commissioner correctly points out, however, a hypothetical need not include all limitations to which a claimant has testified. The ALJ may restrict his questions to those limitations which he has found to exist based upon substantial evidence in the record. *See Hintz v. Chater,* 913 F.Supp. 1486, 1495 (D.Kan.1996) (citing *Gay v. Sullivan,* 986 F.2d 1336, 1341 (10th Cir.1993)). Because the hypothetical upon which the ALJ relied included those impairments which he found credible, it was not incomplete. Plaintiff's argument on this score must be rejected.

6. As noted above, the record reveals that the ALJ did not have before him Dr. Calkins' opinion that plaintiff cannot function in the workplace. As previously noted, however, his opinion in this regard is not a medical one but an application of the statutory criteria of disability. Furthermore, the Appeals Council considered Dr. Calkins' opinion and concluded that it did not warrant a change to the decision of the ALJ.

Plaintiff notes that while the ALJ found that she had no transferrable skills, (Tr. 22), the vocational expert did not specifically state that the jobs of telephone solicitor, ticket sales taker, and surveillance systems monitor are "unskilled" jobs. Plaintiff therefore argues that the ALJ erred in relying upon the expert's testimony regarding these jobs. This argument is without merit. Plaintiff cites no authority for the proposition that the expert must specifically state the skill level of identified jobs in order to provide substantial evidence on the relevant issue, and the ALJ could properly assume that the expert based her answer on the factors which the ALJ told her to consider. *See Whitehouse v. Sullivan,* 949 F.2d 1005, 1006 (8th Cir. 1991); *Clark v. Chater,* 75 F.3d 414, 418 (8th Cir.1996).

Plaintiff further argues—and the Commissioner apparently concedes—that two of the jobs which the expert identified exceed plaintiff's residual functional capacity and are inconsistent with the *Dictionary of Occupational Titles* ("DOT"). *See Montgomery v. Chater,* 69 F.3d 273, 276 (8th Cir.1995) (generally, when expert testimony conflicts with the DOT, the DOT controls). Specifically, it appears that the job of telephone solicitor requires computer skills and the job of ticket seller is in the "light" rather than the "sedentary" category of work. With respect to the job of surveillance systems monitor, plaintiff notes that it has a specific vocational preparation ("SVP") level of two. The DOT describes an SVP level of two as "[a]nything beyond short demonstration up to and including 1 month." (DOT 379.367–010). Accordingly, plaintiff argues that surveillance systems monitor is not an "unskilled job" and that it exceeds her residual functional capacity.

The Commissioner argues that a job with an SVP level of two is clearly an unskilled job, that it is within plaintiff's residual functional capacity, and that sub-

stantial evidence therefore supports the ALJ's conclusion that plaintiff would be able to perform the job of surveillance systems monitor. The Court agrees. The DOT identifies nine SVP levels, with SVP level two falling at the low end of the scale. *See Dictionary of Occupational Titles* app. C (4th ed., Revised 1991). The regulations define unskilled work as work which needs little or no judgment to do simple duties that can usually be learned within 30 days and requires little specific vocational preparation. 20 C.F.R. §§ 404.1568(a), 416.968(a). An SVP level two job, requiring up to one month for the average employee to learn, clearly falls within the definition of work which can be learned within 30 days. Accordingly, the Court rejects plaintiff's argument that the job of surveillance systems monitor is not an "unskilled job." Substantial record evidence supports the ALJ decision that plaintiff can perform a significant number of jobs in the national economy.[7]

**IT IS THEREFORE ORDERED** that plaintiff's *Motion for Judgment* (Doc. # 14) filed March 27, 1998, be and hereby is **OVERRULED.**

---

**7.** The VE testified that there are 209,000 positions nationwide for surveillance systems

monitors. (Tr. 293).