Barbara J. GLENN, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant.

No. 98–4157–DES.

United States District Court, D. Kansas.

June 19, 2000.

Steven M. Tilton, Tilton & Tilton, LLP,
Topeka, KS, for Barbara J Glenn, plaintiff.

Jackie A. Rapstine, Office of United States Attorney, Topeka, KS, for Social Security, Commissioner of, Kenneth F. Apfel, defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on plaintiff's request seeking reversal of the Social Security Commissioner's denial of disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and supplemental security income benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.* The court has reviewed the administrative record and the briefs of both parties. For the following reasons, the plaintiff's request is granted, and this case is reversed and remanded for an immediate award of benefits.

## I. PROCEDURAL BACKGROUND

On September 6, 1995, plaintiff filed applications for disability benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*, and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff alleged the date of disability onset was September 8, 1991. Her applications were denied initially and on reconsideration. Plaintiff then requested an administrative hearing. After the hearing, plaintiff amended her alleged onset date to December 31, 1995. On October 2, 1997, the administrative law judge ("ALJ") rendered a decision in which he found that Ms. Glenn was not under a "disability" as defined in the Social Security Act.

Plaintiff requested a review of that decision by the Appeals Council. She submitted written briefs and additional evidence to the Appeals Council, which were made part of the record. On August 15, 1998, the Appeals Council affirmed the ALJ's decision. The ALJ's decision is the final decision of the Commissioner.

## II. FACTUAL BACKGROUND

Ms. Glenn was born June 30, 1946, and was fifty years old at the time of her administrative hearing. She is five foot, ten inches tall, weighs 248 pounds, and is right handed. Plaintiff obtained a GED in 1974 and completed truck driving school in 1985. She lives with her son and his family. In September 1994, plaintiff began working at Capital City Taxi. She drove a taxi full-time for three months, but had to quit due to pain. She then worked as a dispatcher full-time until October 1995. Plaintiff was missing an average of one day a week, so she switched to part-time. Plaintiff worked as a dispatcher sixteen hours a week until August 1996. In August 1996, plaintiff begin driving a taxi full-time, but only worked an average of four days a week due to pain. In February 1997, plaintiff blacked out and wrecked her taxi. She returned to dispatching twenty-four hours a week, but it was too difficult, so she restricted her hours to sixteen a week. At the time of the hearing, plaintiff worked as a dispatcher sixteen hours a week. Plaintiff's other relevant past work includes truck driver, carnival driver, tractor-trailer driver, and cashier/stocker. Plaintiff alleges disability due to chronic pain and fatigue, fibromyalgia, bad heart, chest pain, anxiety, depression, headaches, vision deficit, shortness of breath, and severe memory and concentration problems.

Plaintiff has been diagnosed with fibromyalgia, which has been described as:

[A] common, but elusive and mysterious disease, much like chronic fatigue syndrome, with which it shares a number of features.... Its cause or causes are unknown, there is no cure, and of greatest importance to disability law, its symptoms are entirely subjective.... The principal symptoms are pain all over, fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations

on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

*Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir.1996). The plaintiff has all eighteen tender spots.

At the hearing, plaintiff testified that she has constant pain throughout her entire body almost every day, including back, shoulders, hands and thumbs. Her back pain has gotten worse. Swelling in her hands and feet make it difficult to use her hands and to walk. Plaintiff has numbness from the tips of her fingers to her wrist on her left hand. She has poor grip strength in both hands, and has dropped dishes. She can only lift three to five pounds ten times an hour and five to ten pounds less than ten times per day. Plaintiff has difficulty bending and stooping. She cannot sit for long periods of time, and has to get up and walk around the room when watching a television show. She can stand five minutes before she has increased pain. She can only walk one and one-half blocks before she needs to sit down. Her gait is somewhat stiff hipped, and she has pain from her hip which radiates down her leg, and sometimes she has pain in her foot.

Plaintiff also testified that she is fatigued. She spends a great deal of time in bed due to fatigue and waking up is often difficult. She has trouble sleeping throughout the night. Plaintiff falls asleep during the day in her chair and takes naps that last two to three hours during the day. Simple tasks such as taking a bath and getting dressed will cause fatigue. Plaintiff suffers frequent headaches which occur four or five times a week and last about four hours. Her headaches cause double vision. Plaintiff also has difficulty concentrating and remembering things she reads, events, appointments, and when to take her medication.

Plaintiff also suffers from depression. She testified that she is depressed because she is in pain and cannot do things for herself, cannot work, cannot have a social life, and cannot go shopping with friends. She is often too depressed to get out of bed. She does not feel like being around people, and only has two friends. The last time she thought about committing suicide was in 1996. At the time of the hearing, she didn't think she could actually commit suicide. Plaintiff is treated at Shawnee Community Mental Health Clinic for suicidal thoughts, depression, stress, anxiety and chronic pain syndrome. Although she is on medication for depression, she does not feel it helps.

When describing her daily activities, plaintiff testified that she has difficulty doing housework due to pain and fatigue. She paces herself, doing laundry and dishes in small bits at a time. She cannot carry the laundry basket or heavy pots and pans. She takes breaks while doing the dishes or vacuuming. She uses an electric cart to do her grocery shopping, and needs help carrying the groceries. She can drive, but cannot sit for very long. She has no hobbies and no longer attends bingo. She visits with one friend every week, and visits relatives only on holidays.

Plaintiff takes a variety of medications. Plaintiff takes Tylenol 3 to control the pain caused by fibromyalgia. In addition to suffering from fibromyalgia, plaintiff is a diabetic. She takes Glynase and Glucophage to control her blood sugar, and she sees a doctor once every two weeks because her condition is poorly controlled. Plaintiff has a heart condition and takes one-half aspirin a day and takes Nitrostat for chest pain. She had congestive heart failure in 1987, and is at high risk for cardiovascular disease. The Nitrostat causes plaintiff to feel light headed and have headaches. Plaintiff takes Lescol to control her high cholesterol. She uses Albuterol inhaler to help control respiratory distress. The Albuterol inhaler causes nausea, and she takes Previcid for stomach upset. Plaintiff is also taking Ogen for estrogen replacement. She is on Zoloft for depression, which causes drowsiness.

Plaintiff had bladder surgery and has incontinence. She wears adult diapers when she leaves her home and carries extras with her.

Janice Hastert, vocational expert, testified in response to hypothetical questions. She testified that if plaintiff had the abilities described by the ALJ, plaintiff could perform jobs such as small parts assembler, photocopy machine operator, and laundry folder. Ms. Hastert testified the plaintiff could not be substantially gainfully employed at the jobs listed above if she could not work a forty-hour work week. She also testified that if plaintiff's deficiencies in concentration, persistence and pace were "often" or if plaintiff had "marked" social functioning, plaintiff would not be employable in the jobs previously mentioned. Ms. Hastert also testified that plaintiff would not be employable if she had to miss work more than one day a month.

### III. STANDARD OF REVIEW

Title 42, § 405(g) of the United States Code provides for judicial review of a final decision of the Commissioner of the Social Security Administration (SSA). The reviewing court must determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir.1994). Substantial evidence is adequate, relevant evidence that a reasonable mind might accept to support a conclusion. *Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir.1991). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir.1994) (citation omitted). "A finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir.1992) (citations omitted). The reviewing court must also determine whether the Commissioner applied the correct legal standards. *Washington*, 37 F.3d at 1439. Reversal is appropriate not only for lack of substantial evidence, but also for cases where the Commissioner uses the wrong legal standards. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir.1994). In applying these standards, the court must keep in mind the purpose of the Social Security Act is to ameliorate some of the rigors of life for those who are disabled. *Dvorak v. Celebrezze*, 345 F.2d 894, 897 (10th Cir.1965).

### IV. COMMISSIONER'S DECISION

In the October 2, 1997, decision, the ALJ made the following findings:

1. Claimant met the special earnings requirements of the Act on December 31, 1995, the amended date she stated she became unable to work, and continues to meet them through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since December 31, 1995.

3. The medical evidence establishes that claimant has the following severe impairments: fibromyalgia, diabetes mellitus, chronic obstructive pulmonary disease, and sciatic notch inflammation. She also has a depressive disorder, NOS, which is not considered separately severe. Nevertheless, the claimant does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. Based upon the inconsistencies in the record and lack of objective medical evidence to support claimant's subjective complaints of pain and limitations, as more fully detailed in the body of this decision, the undersigned does not find claimant's testimony credible.

5. As a result of her impairments, the claimant can lift no more than ten pounds frequently or twenty pounds occasionally; she cannot engage in prolonged walking; she requires the

opportunity to alternate sitting and standing at will; she cannot engage in work activities requiring hand grip strength bilaterally, or frequent climbing, bending, stooping, crouching, crawling or kneeling; and she requires the opportunity to lie down or recline and rest due to fatigue up to one hour total during a work day, at predictable times which can be scheduled over regular work breaks. In addition, as a result of claimant's mental impairment, which is not considered separately severe, she has no restrictions of daily living, only slight difficulties in maintaining social functioning, seldom has deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner, and has had no episodes of deterioration or decompensation in work or work-like settings. (See *Psychiatric Review Technique Form* attached to this decision and incorporated herein by this reference.)

6. The claimant's impairments prevent her from performing her past relevant work as a carnival driver, tractor-trailer driver, truck driver, machine feeder, and cashier/stocker.

7. Claimant was 49 years old, a younger individual, on her alleged onset date, having been born on June 30, 1946, and an individual approaching advanced age as of June 30, 1996, when she attained age 50 (20 C.F.R. §§ 404.1563 and 416.963). The claimant has the equivalent of a high school education.

8. Given claimant's vocational profile and determined residual functional capacity, as set forth in Finding 5, she can perform other work at the light unskilled levels which exists in significant numbers in the local and national economies. Such work includes approximately 920 light, unskilled small parts assembler jobs in the Kansas City area with 84,250 such jobs in the national economy; 130 light, unskilled photocopy ma-chine operator jobs in the Kansas City area with 12,800 such jobs in the national economy; and 160 light, unskilled laundry folder jobs in the Kansas City area with 42,000 such jobs in the national economy. This Finding is based on the testimony of the vocational expert.

9. The claimant has not been under a "disability" as defined in the Social Security Act, as amended, from December 31, 1995, through the date of this decision (20 C.F.R. §§ 404.1520(d) and 416.920(d)).

## V. DISCUSSION

█ To qualify for disability insurance benefits, a claimant must establish that she meets the insured status requirements, is under sixty-five years of age, and is under a "disability." *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir.1991). To qualify for supplemental security income, the claimant must establish that she is under a disability while the application is pending. 20 C.F.R. §§ 416.330 and 416.335. As defined in the Act, "disability" is the inability to engage in any substantial gainful activity for at least twelve months due to a medically determinable impairment. 42 U.S.C. § 423(d)(1)(A) (1995).

The Commissioner has established a five-step evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. *Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir.1988). Those five steps are as follows:

(1) A person who is working is not disabled.

(2) A person who does not have an impairment or combination of impairments severe enough to limit the ability to do basic work activities is not disabled.

(3) A person whose impairment meets or equals one of the impairments listed in the regulations is conclusively presumed to be disabled.

(4) A person who is able to perform work [he] has done in the past is not disabled.

(5) A person whose impairment precludes performance of past work is disabled unless the [Commissioner] demonstrates that the person can perform other work. Factors to be considered are age, education, past work experience, and residual functional capacity.

20 C.F.R. § 416.920. The claimant has the burden of establishing disability at the first four steps. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir.1989). At step five, the burden shifts to the commissioner to show the claimant retains the ability to perform other work which exists in the national economy. *Id.* Although the ALJ determined that plaintiff could not perform her past relevant work, he found that she had the retained functional capacity to perform available light, unskilled work. The ALJ rejected both the plaintiff's testimony and her treating physicians' testimony because of a lack of objective medical evidence to support the allegations of disabling pain and fatigue. The court finds the ALJ's decision is not supported by substantial evidence.

### A.  Plaintiff's Testimony

Plaintiff argues the ALJ improperly discounted her testimony with respect to her pain and fatigue. Courts have recognized that the pain suffered by those diagnosed with fibromyalgia can be disabling. *See Sarchet,* 78 F.3d at 309; *Cline v. Sullivan,* 939 F.2d 560 (8th Cir.1991); *Ward v. Apfel,* 65 F.Supp.2d 1208 (D.Kan.1999); *Biri v. Apfel,* 4 F.Supp.2d 1276 (D.Kan.1998). The symptoms of fibromyalgia are entirely subjective, and there are no clinical tests to identify its presence or severity. *Sarchet,* 78 F.3d at 306. The Commissioner does not dispute that the plaintiff has fibromyalgia. It is disputed whether the plaintiff suffers disabling pain and fatigue as a result of the fibromyalgia.

■ Proper credibility determinations are essential in cases involving subjective symptoms. Subjective symptoms must be evaluated with due consideration of credibility, motivation, and medical evidence of impairment. *Dvorak,* 345 F.2d at 897. Other factors the court considers in evaluating whether pain is disabling are attempts to find relief from pain, willingness to try treatment, regular contact with a doctor, and daily activities. *Luna v. Bowen,* 834 F.2d 161, 165–66 (10th Cir. 1987). Although the ALJ must consider plaintiff's subjective complaints, the ALJ does not have to accept them as true. *Underwood v. Bowen,* 807 F.2d 141, 143 (8th Cir.1986); *Arensman v. Apfel,* 40 F.Supp.2d 1249, 1254 (D.Kan.1999). The ALJ normally determines the weight and credibility of testimony, and these determinations are generally considered binding on the reviewing court. *Broadbent v. Harris,* 698 F.2d 407, 413 (10th Cir.1983). However, there must be some basis in the record for the ALJ to disbelieve crucial testimony. *Lund v. Weinberger,* 520 F.2d 782, 785–86 (8th Cir.1975).

■ Both plaintiff's testimony and written descriptions of her daily activities support the finding that plaintiff is disabled. Neither written nor oral statements regarding her activities and level of pain support a claim that plaintiff could engage in substantial gainful activity. To discredit plaintiff, the ALJ points to slight discrepancies between the plaintiff's testimony and her answers on the pain questionnaire. Plaintiff's written report claims she does light house cleaning as the pain permits and that she can not drive extended distances because of pain. These answers are not inconsistent with the detailed explanation provided by plaintiff at the hearing, where plaintiff described in detail what housework is done, how it is done, and her ability to perform such tasks on a consistent basis. The ALJ also states that plaintiff's daily activities, as she described to Dr. Ohlde, are indicative of an ability to work. However, there is no suggestion that plaintiff performs these basic daily activities with any consistency.

The opinions of Dr. Sikes and Dr. McKinney confirm plaintiff's testimony that she is unable to work due to chronic pain and fatigue. The reviewing court may evaluate the ALJ's decision with a skeptical eye where the claimant's subjective complaints of pain are supported by treating physicians. *Broadbent,* 698 F.2d at 414. Both treating doctors agree that plaintiff is disabled, and none of the doctors suggested that plaintiff was exaggerating her symptoms. The ALJ points to Dr. Peter Bieri's observation that plaintiff responds to tenderness all over the body, including light touch. However, widespread pain is a symptom fibromyalgia, and the doctor did not state that he believed plaintiff was exaggerating her response. Plaintiff's reaction supports her claim of severe pain.

The ALJ also points to the lack of objective medical evidence to support plaintiff's claims. However, as discussed above, the symptoms of fibromyalgia are subjective, pain all over, fatigue, disturbed sleep, and stiffness, and there are no objective clinic tests to determine its severity. *Sarchet,* 78 F.3d at 306. "The only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch." *Id.* The plaintiff has all eighteen tender spots. Two of plaintiff's treating physicians determined that plaintiff suffered from disabling pain and fatigue caused by fibromyalgia.

In addition, plaintiff is on several medications to control her medical condition, specifically, she takes Tylenol 3 to control pain. Plaintiff is also taking 100 mg per day of Zoloft to control her depression, which causes drowsiness. The ALJ does not discuss this side-effect of her medication. Plaintiff has continually sought treatment for her numerous conditions. The medical record includes repeated complaints of disabling pain and fatigue, many of which were reported by plaintiff to the Shawnee County Mental Health Center, where she was treated for depression.

The ALJ's finding that the plaintiff is not credible is not supported by the record. There are no legitimate reasons to discredit the plaintiff's testimony. There is no suggestion of exaggeration of symptoms in the record, and the plaintiff's testimony is supported by her treating physicians. The ALJ improperly rejected the plaintiff's testimony.

**B. Physician Testimony**

The ALJ also discredited the opinions of two treating physicians, who determined the plaintiff suffered disabling pain as a result of the fibromyalgia. Plaintiff was first diagnosed with fibromyalgia on July 14, 1993, by Dr. David Sikes, a rheumatologist and specialist in this area. Dr. Sikes found plaintiff suffered from fatigue and sleeplessness and was disabled due to fibromyalgia. On August 6, 1993, Dr. Sikes determined that plaintiff had typical, but very severe, fibromyalgia. He reported that plaintiff suffered from severe, unremitting pain, throughout her body. Plaintiff was unable to stand for more than fifteen minutes, after sitting for about an hour, she must lie down. Plaintiff could not lift more than ten pounds, unable to bend more than once at a time, had to hold on to things for support to get off the floor or squat. He determined that she was unable to hold any gainful employment, and that sedentary jobs were beyond plaintiff's functional capacities. Dr. Sikes recognized that the only "objective" evidence of inflammatory disease was the presence of trigger points and microscopic colitis. Likewise, on May 8, 1997, Dr. Sharon McKinney, diagnosed plaintiff with fibromyalgia. Dr. McKinney opined that plaintiff had decreased endurance and was not able to work fast enough or long enough to be employable in the competitive work force beyond perhaps a couple of hours a day, and even then might have to miss work occasionally due to pain and stiffness.

It is well-established that the ALJ must give substantial weight to the testimony of the claimant's treating physician, unless good cause is shown. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir.1987). A treating physician's opinion may be rejected "if it is brief, conclusory, and unsupported by medical evidence." *Id.* (quoting *Allison v. Heckler*, 711 F.2d 145, 148 (10th Cir.1983)). Before an ALJ can disregard a treating physician's testimony, he must set forth specific, legitimate reasons. *Id.* (quoting *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir.1984)).

The ALJ did not find either treating doctors' opinion credible. Both opinions were discredited due to a lack of objective medical evidence and the doctors' reliance on plaintiff's subjective complaints. The ALJ stated Dr. Sikes' specialist opinion "is accorded no weight as it is inconsistent with his physical examination of claimant, which revealed a full range of motion and no synovitis of the hands, wrists, elbows and shoulders ... [and] is solely based on the subjective complaints of claimant." The ALJ did not refer to Dr. Sikes' report which specifically stated, "there are typical fibromyalgia trigger points." Nor did the ALJ mention that Dr. Sikes is a specialist in this field. Likewise, the ALJ stated he gave no weight to Dr. McKinney's opinion because "it is not supported by any objective clinical findings or other medical evidence of record, but rather appears to be based on the subjective complaints of claimant." Dr. McKinney found plaintiff had all eighteen trigger points. As discussed above, the lack of "objective" medical evidence is the basis for a finding of fibromyalgia. There was ample evidence in the record that plaintiff suffered from fibromyalgia, which caused disabling pain and fatigue. The court finds that the ALJ's reasons for disregarding Dr. McKinney's and Dr. Sikes' opinion are not legitimate.

The ALJ relies on the opinion of consultative examiners Dr. Peter Bieri and Dr. Daniel Thompson to find plaintiff was not disabled. However, the reports of treating physicians are to be given greater weight than reports of consulting or reviewing physicians. *Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir.1987); *Hintz v. Chater*, 913 F.Supp. 1486, 1492 (D.Kan. 1996). On August 28, 1996, Dr. Bieri found plaintiff had no trigger points that significantly related to fibromyalgia. It is unclear that Dr. Bieri even reviewed plaintiff's medical history, as evidenced by the fact that he did not know her current medications or regimen. In addition, Dr. Bieri is not a specialist in this area.

Two other physicians determined plaintiff had fibromyalgia, but did not discuss the level of pain experienced by plaintiff. On April 6, 1996, Dr. Daniel Thompson, determined plaintiff suffered from fibromyalgia, but gave no opinion as to whether the pain was disabling. The ALJ points out that Dr. Thompson reported no inflammatory changes, including arrhythmia or hypothermia, to suggest radiculopathy. However, this is not the proper method of testing for fibromyalgia. On October 30, 1996, Dr. Laurel Vogt, diagnosed non-active, fibromyalgia, and on January 29, 1997, noted that plaintiff's fibromyalgia did not appear to be "terribly" active. Dr. Vogt did not address plaintiff's level of pain, and the record reflects plaintiff's fibromyalgia has had remissions and exacerbations. These opinions do not support the ALJ's rejection of the testimony of two treating physicians.

Absent specific legitimate reasons, the ALJ must give more weight to the treating physician's opinion than that of a consulting/reviewing physician. The ALJ did not properly consider the opinions of Dr. Sikes and Dr. McKinney, which clearly supports the plaintiff's disability claim.

## VI. CONCLUSION

The court finds that considerable evidence does not support the ALJ's decision that plaintiff could engage in substantial gainful activity. A review of the record as a whole supports the conclusion that the plaintiff was disabled and unable to work

as of December 31, 1995. Therefore, the decision of the ALJ is reversed. Because the work was sedentary or light, it is appropriate to remand this case for an award of benefits. *Sisco v. United States Dep't of Health and Human Serv.*, 10 F.3d 739, 745–46 (10th Cir.1993).

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiff's request is granted. The ALJ's decision is reversed and remanded to the Commissioner for an immediate award of benefits consistent with this memorandum and order.