David RAIA, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security; Defendant.

No. CIV.A.CV–03–G–1807–S.

United States District Court,
N.D. Alabama,
Southern Division.

May 13, 2004.

R. Michael Booker, R. Michael Booker PC, Birmingham, AL, for David Raia, plaintiff.

Alice H. Martin, U.S. Attorney, Winfield J. Sinclair, U.S. Attorney's Office, Birmingham, AL, Mary Ann Sloan, Social Security Administration–Office of General Counsel, Atlanta, GA, for Jo Anne B Barnhart, Commissioner of Social Security Administration, defendant.

## MEMORANDUM OPINION

GUIN, District Judge.

Plaintiff brings this action pursuant to the provisions of section 205(g) of the Social Security Act, [hereinafter the Act], 42 U.S.C. § 405(g),[1] seeking judicial review of a final adverse decision of the Commissioner of Social Security [hereinafter Commissioner]. Application for a period of disability and disability insurance benefits under sections 216(i) and 223 of the Social Security Act, as amended, was filed January 13, 1999. These applications were de-

---

**1.** 42 U.S.C. § 1383(c)(3) renders the judicial provisions of 42 U.S.C. § 405(g) fully applicable to claims for Supplemental Security Income [hereinafter SSI].

nied initially and upon reconsideration. Request for a hearing before an administrative law judge [hereinafter ALJ] was granted, and a hearing was held June 13, 2000. The ALJ's decision to deny benefits was handed down September 27, 2000. Plaintiff's request for review by the Appeals Council was denied May 16, 2003. An appeal to this court followed.

Plaintiff is a 46 year old male with a twelfth grade education, including two years of vocational training in the eleventh and twelfth grades. Past relevant work is heating and cooling repair. He was self-employed the last ten years of his work years[2] and has a good work record.[3] He last worked July 31, 1998.

■ Mr. Raia complains of constant, severe, disabling pain—pain which he rates at an eight on a scale of ten—resulting from fibromyalgia,[4] arthritis, and carpal tunnel syndrome. He suffers with chronic fatigue syndrome,[5] a nervous condition, anxiety, and depression which he attributes to pain: "[The pain] starts wearing on your mind after awhile and makes you nervous and irritable. And it makes you want to think about actually killing yourself sometimes."[6] Plaintiff testified pain restricts his ability to function in competitive employment to a marked degree.[7] He further testified he has difficulty sitting for any length of time. After about 30 minutes he has leg numbness. He can stand

2. At one time he had eight employees. After becoming sicker and sicker he sold the business.

3. At the hearing the ALJ noted plaintiff's good work record. When asked how it felt not to be able to work plaintiff replied it did not make him feel good. He had always prided himself on being able to work and support his family.

4. Fibromyalgia indicates pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other "white" connective tissues. Merck Manual of Diagnosis and Therapy (15th ed.1987). It is a widespread musculoskeletal pain and fatigue disorder for which the cause is still unknown. Fibromyalgia means pain in the muscles, ligaments and tendons—the fibrous tissues in the body. FMS used to be called fibrositis. The pain of fibromyalgia has no boundaries. The disease is chronic. Overall studies have shown that fibromyalgia can be equally disabling as rheumatoid arthritis. *Fibromyalgia Basics—Symptoms, Treatments and Research,* (Google, Fibromyalgia Network 2002). According to Williams Hennen, Ph.D., author of *Fibromyalgia: A Nutritional Approach,* fibromyalgia has been classified as a syndrome, not a disease. He explains that a disease is a condition with a clearly identifiable cause, while a syndrome is a set of symptoms that define the condition without a single causative agent upon which to place the blame. *Fibromyalgia Tenderpoints Index,* at htt p://www.immunesupport.com/fibromyalgia-tenderpoints.htm (Visited May 10, 2004).

5. CFS is a serious, multi-systemic disease, organic in origin. Deborah Lonergan, Paula Frighetti, & Mary Schweitzer, *What is CFIDS/M.E.?,* CFIDS/ME Information, (1998). Persons suffering from CFS have "concurrent occurrence of four or more of the following symptoms: substantial impairment in short-term memory or concentration; sore throat; tender lymph nodes; muscle pain; multijoint pain without swelling or redness; ... (and) unrefreshing sleep" for six or more consecutive months of illness. Fukuda, Ann Intern Med 1994; 121; 953–9 (Visited May 12, 2004).

6. When questioned plaintiff testified he had thought about suicide a couple of times

7. *See Wilson v. Barnhart,* 284 F.3d 1219, 1225 (11th Cir.2002), which reaffirmed the pain standard set by the Circuit:

In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

A disability claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. *Foote v. Chater,* 67 F.3d 1553, 1561 (11th Cir.1995).

for approximately 20 minutes. On a good day, on a level surface, he is able to walk about two blocks. His ability to concentrate is not good.

Daily activities include getting up, having coffee, and sitting on the porch about 20 minutes to get some sun. He lies down and sleeps a couple of hours and watches television. He described his day in the following manner: "I just kind of float through the day." He does no work around the house or grocery shopping. He drives very little.

Household income includes plaintiff's annuity of $1,385.00 a month and Mrs. Raia's disability check.

■ Notes of plaintiff's treating physician[8] Thomas Nolan on December 7, 1998, include the following statement: "He is certainly not able to work at this point in time."[9]

On the bone scan scheduled by Dr. Nolan for December 16, 1998, because of plaintiff's joint pain Dr. Daniel W. Thompson, who interpreted the scan on December 17, 1998, found slight asymmetric increased activity over the right AC joint consistent with degenerative change. Dr. Thompson's impression follows:

IMPRESSION:

1. Two foci over the calvarium as described (focal area of activity projecting over the left frontal region of the Calvarium as well as the right superolateral orbit) which are indeterminate and while likely of no significance, their etiology is unknown. Further evaluation with plain films of the skull or CT should be considered.

2. Several asymmetrical foci involving the right AC joint and hands as described (several foci of increased activity with most prominent being on the left at the 3rd metacarpophalangel joint and DIP joint of the middle finger), all consistent with arthritis, likely osteoarthritis.

Dr. Nolan's treatment notes of November 17, 1999, indicate plaintiff presented for treatment of fibromyalgia.[10] He had

---

**8.** Plaintiff testified Dr. Nolan had been his physician most of his life.

**9.** The ALJ rejected the opinion of Dr. Nolan stating his clinic records do not warrant the conclusion. He rejected notes from additional subsequent examinations, opining that plaintiff's impairments and limitations were not of the degree or severity asserted. There is nothing in the record upon which to base that opinion. It is not the province of the ALJ to substitute his "medical opinion" for the medical opinion of the treating physician. This court particularly likes the language employed in the concurring opinion of Senior Circuit Judge Johnson denying this "right" in *Marbury v. Sullivan*, 957 F.2d 837, 840–41 (11th Cir.1992), a portion of which follows:

An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of claimant's treating physicians: "Absent a good showing of cause to the contrary, the opinions of treating physicians must be ac-

corded substantial or considerable weight by the Secretary." *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir.1988).... An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his private or personal capacity; however, as a hearing officer he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.

*See also Youngblood v. Shalala*, 1994 WL 722863, *4 (N.D.Ala.1994) The ALJ who is not a medical doctor may not arbitrarily reject uncontroverted medical testimony supporting disability. He clearly overstepped the bounds of his authority.

**10.** In discussing the disabling aspects of fibromyalgia this court turns to the opinion of *Glenn v. Apfel*, 102 F.Supp.2d 1252, 1258–59 (D.Kan.2000), set forth in part below:

Proper credibility determinations are essential in cases involving subjective symptoms. Subjective symptoms must be evaluated

some swelling with ankle effusion bilaterally. The doctor's notes of December 14, 1999, indicate plaintiff was having "a lot of pain of arthritis in his shoulders, elbows, knees, and ankles" and was having symptoms of fibromyalgia. Hypertrophic changes [11] were present in his knees. The doctor started him on Zanaflex [12] because claimant "has restless legs."

Disability Determination referred plaintiff to Dr. Prameela D. Goli, for musculoskeletal evaluation. Her notes of January 19, 2000, show plaintiff complained of "achiness everywhere." At the time of her evaluation plaintiff was taking Lortab,[13] Zanaflex, and Celebrex.[14] Examination revealed tenderness over the paralumbar muscles and tenderness with effusion over right ankle. He had multiple tender points [15] around the elbow, neck and lumbar area. Dr. Goli's assessment follows:

ASSESSMENT: 1) Patient with severe muscle and joint aching, with symptoms consistent with fibromyalgia.

On the "Physical Capacities Evaluation" she completed Dr. Goli identified restrictions consistent with light work. Postural and manipulative limitations included restrictions on bending, squatting, crawling, climbing and reaching to occasionally only.

In addition to plaintiff's physical problems neuropsychologist Thomas Conboy believes plaintiff is impaired adversely by emotional and cognitive problems. Dr. Conboy performed a neuropsychological examination [16] January 18, 2000. His sum-

with due consideration of credibility, motivation, and medical evidence of impairment. *Dvorak*, 345 F.2d at 897. Other factors the court considers in evaluating whether pain is disabling are attempts to find relief from pain, willingness to try treatment, regular contact with a doctor, and daily activities.

\* \* \* \* \* \*

The reviewing court may evaluate the ALJ's decision with a skeptical eye where the claimant's subjective complaints of pain are supported by treating physicians. *Broadbent*, 698 F.2d at 414. Both treating doctors agree that plaintiff is disabled, and none of the doctors suggested that plaintiff was exaggerating her symptoms.

\* \* \* \* \* \*

[T]he symptoms of fibromyalgia are subjective, pain all over, fatigue, disturbed sleep, and stiffness, and there are no objective clinic tests to determine its severity.

11. Hypertrophy is the enlargement or overgrowth of an organ or part due to an increase in size of its constituent cells. *Dorland's Illustrated Medical Dictionary* (W.B. Sanders Company 28th ed 1994) [hereinafter *Dorland's*].

12. Zanaflex (tizanidine hydrochloride) is a muscle relaxant used to treat muscle spasms and movement associated with spesticity. It works by blocking nerve impulses. *Zanaflex Muscle Relaxant,* at http://grand-medi-cations.com/Zanaflex/ (Last visited May 10, 2004).

13. Lortab tablets are indicated for the relief of moderate to moderately severe pain. The most frequently reported adverse reactions are lightheadedness, dizziness, sedation, nausea and vomiting. These effects seem to be more prominent in ambulatory than in non-ambulatory patients. *Physicians' Desk Reference*, (Medical Economics Company, Inc., Inc. 56rd ed 2002) [hereinafter PDR].

14. Celebrex is indicated for relief of the signs and symptoms of osteoarthritis and rheumatoid arthritis in adults. PDR.

15. Tender points are anatomically-defined soft tissue body sites. There are 18 tender points on the body that will usually be highly sensitive to pressure in people with fibromyalgia as specified by the American College of Rheumatology criteria.. *Fibromyalgia Tenderpoints Index*, at htt p://www.immunesupport.com/fibromyalgia-tenderpojnts.htm (Visited May 10, 2004).

16. A neuropsychological evaluation is a subspecialty of psychology that requires additional certification from the American Psychological Association. It is based on mental status examination and interview as well as a battery of neuropsychological tests.

mary, in part, follows:

> In summary, this very pleasant but somewhat unfortunate 42–year–old male, diagnosed with fibromyalgia, chronic fatigue syndrome, and Osteoarthritis appears also to suffer from a general/diffuse (although overall mild/moderate) degree of encephalopathy,[17] as is usually seen in persons with chronic fatigue syndrome (which is, recently, increasingly considered to be primarily a neurological disorder). This patient's resulting cognitive deficits, standing alone, would render him, in my opinion, unable to withstand customary rigors and pressures of any type of gainful employment. In particular, learning new information would be extremely difficult. He has difficulties with verbal memory, visual memory, speed of information processing and general ability to make decisions spontaneously and correctly which would also render him potentially unsafe to himself and others in the work place.

> .    .    .    .    .

> I believe that the patient is, presently, unable to be gainfully employed ....

On the "Supplemental Questionnaire As to Residual Functional Capacity" Dr. Conboy rated plaintiff's impairments as "Marked"[18] in all but two categories. He estimated plaintiff's deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner as "Extreme."[19] He rated plaintiff's ability to respond appropriately to supervision in a work setting as "Moderate."[20] Dr. Conboy opined that plaintiff's impairment could be expected to last for 12 months and that the impairment had existed since early 1995.[21]

Vocational expert Dr. David Head testified that if plaintiff's pain was extreme as claimed that he would be unable to work. He also testified that the restrictions outlined by Dr. Conboy would effectively preclude claimant from engaging in substantial gainful employment.

The Administration had plaintiff examined by Dr. Velda Pugh March 21, 2000.[22] Dr. Pugh performed a mental status examination only and conducted no psychological testing or neuropsychological testing. On the psychiatric evaluation Dr. Pugh noted plaintiff's mood was depressed—a condition that according to plaintiff was secondary to being in pain all the time. She diagnosed mood disorder secondary to general medical conditions of fibromyalgia, osteoarthritis, and chronic pain syndrome. Her prognosis for claimant was "fair." She opined his primary disability appears related to fibromyalgia. Nothing in Dr.

---

17. Encephalopathy is a term for any diffuse disease of the brain that alters brain function. The hallmark of encephalopathy is an altered mental state. Common neurological symptoms are progressive loss of memory and cognitive ability, subtle personality changes, inability to concentrate, lethargy, and progressive loss of consciousness. Encephalopathy may cause permanent changes and irreversible damage to the brain. *NINDS Encephalopathy Information Page,* at http://www.ninds. nil.gov/health_and_medical/disorders/encephalopathy.htm. (Visited May 10, 2004).

18. A "marked" impairment is an impairment which seriously affects ability to function.

19. An "extreme" impairment is a severe impairment of ability to function.

20. A "moderate" impairment is an impairment which affects but does not preclude ability to function.

21. The ALJ rejected Dr. Conboy's report, stating he was not a treating physician and that there was nothing credible in the record to corroborate his opinion. He did not, however, identify any "credible" evidence that controverted the opinion. The court found none.

22. There is no evidence Dr. Pugh had access to Dr. Conboy's report at the time of her examination.

Pugh's report controverts Dr. Conboy's extensive neuropsychological evaluation.

In reaching his decision the ALJ, Jerome L. Munford, found claimant has "severe" impairments of fibromyalgia, depression, and carpal tunnel syndrome, but he did not have an impairment or combination of impairments which met or equaled the Listings. He found plaintiff was able to perform light work.

■ "The function of a reviewing court is limited to determining whether the Secretary's findings are supported by substantial evidence considering the evidence as a whole." *Mims v. Califano,* 581 F.2d 1211, 1213 (5th Cir.1978). "Substantial evidence is more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983). It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 852 (1971). The court is still responsible for scrutinizing " 'the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding.' " *Boyd v. Heckler,* 704 F.2d 1207, 1209 (11th Cir.1983) (quoting *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir.1982)). The Eleventh Circuit has gone on to state the following:

> Our limited review does not, however, mean automatic affirmance, for although we defer to both the Secretary's fact-finding and her policy judgments, we must still make certain that she has exercised reasoned decision making. To this end, we evaluate the Secretary's findings in light of the entire record, not only that evidence which supports her position.

*Owens v. Heckler,* 748 F.2d 1511 (11th Cir.1984).

The court must further consider whether the decision of the Commissioner contains a material error of law. In *Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir.1987), the court held:

> Despite this limited review, we scrutinize the record in its entirety to determine the reasonableness of the secretary's factual findings. *Bridges,* 815 F.2d at 624; *Arnold v. Heckler,* 732 F.2d 881, 883 (11th Cir.1984). No similar presumption of validity attaches to the Secretary's legal conclusions, including determination of the proper standards to be applied in evaluating claims. *Wiggins v. Schweiker,* 679 F.2d 1387, 1389 (11th Cir.1982).

■ Having evaluated the evidence, the court holds that the evidence does not support the decision denying disability benefits. Improper legal standards were applied. 1) The ALJ did not follow the pain standard set by the Eleventh Circuit. Plaintiff's diagnosed medical conditions with accompanying objective signs (tender points, tenderness, swelling, results of bone scan) could reasonably produce the pain of which he complained. 2) The ALJ failed to follow the uncontroverted medical opinions of plaintiff's treating physicians.[23]

---

23. The opinions of physicians are not determinative of the issue of disability, 20 C.F.R. § 404.1526 (1995). The law is clear, however, that the ALJ must give substantial weight "to the opinion, diagnosis, and medical evidence of the claimant's treating physician." *Wiggins v. Schweiker,* 679 F.2d 1387 (11th Cir.1982); *Smith v. Schweiker,* 646 F.2d 1075 (5th Cir.1981). The Eleventh Circuit has gone further to hold that where the Secretary ignores or fails to properly refute a treating physician's report, the findings in that report are to be accepted as true as a matter of law. *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir.1986). The Secretary must give "explicit and adequate reasons for rejecting the opinion of the treating physician." *Elam v. Railroad Retirement Board,* 921 F.2d 1210, 1215 (11th Cir.1991).

3) The ALJ impermissibly substituted his "medical" opinion for that of the treating physician.

For the reasons set forth in this opinion the decision of the Commissioner is REVERSED. An order consistent with this opinion is being entered contemporaneously herewith.

## FINAL ORDER

In conformity with and pursuant to the memorandum opinion entered contemporaneously, it is

ORDERED, ADJUDGED and DECREED that the decision of the Commissioner of Social Security be and it hereby is REVERSED, and the case is REMANDED to the Commissioner with instructions that the plaintiff be granted the benefits claimed.

It is FURTHER ORDERED that the Commissioner withhold from payments which he may determine are due plaintiff under this order an amount not to exceed 25 percent of the total amount of disability benefits to which the plaintiff is entitled, pursuant to the provisions of section 206 of the Social Security Act, as amended 42 U.S.C. § 406(b). The Commissioner is directed to advise the court of the amount withheld so that the matter may be set for final determination of the amount of attorney's fees to be allowed plaintiff's counsel for services rendered in representing the plaintiff in this cause.

It is FURTHER ORDERED that pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, that plaintiff's attorney is hereby GRANTED an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b) until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. *This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.*